848 So.2d 41 (2003)
Chiwana J. JONES, Wife of/and Henry Jones, individually and appearing on behalf of their Minor Child, Breion Jones; Andre James Phillips, individually and as the duly appointed Provision Tutor of and appearing on behalf of Diana James; Orlando James Brown, individually and appearing on behalf of her Minor Child, Norman James,
v.
Nick CONGEMI, both individually and as the Chief of Police, City of Kenner, ABC Insurance Company, Michael Archuleta, Russell Moran, Bennie Bazely, and Robert King, as the Natural Tutor of Terrence King.
Wilmareen James, Wife of/and Wilson James,
v.
Nick Congemi, individually and as the Chief of Police, City of Kenner, Michael Archuleta, Russell Moran, Bennie Bazley and Terrence King.
Nos. 01-C-1345, 02-CA-148, 02-CA-149.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 2003.
*42 Daniel A. Claitor, Claitor & Loupe, L.L.C., Baton Rouge, LA, for Chiwana Jones, et al., Plaintiffs/Appellees.
Karl Wiedemann, Wiedemann & Wiedemann, New Orleans, LA, for Wilmareen James and Wilson James, Plaintiffs/Appellees.
Edward F. Kohnke, IV, James H. Brown, Jr., Frilot, Patridge, Kohnke & Clements, New Orleans, LA, and Lawrence J. Duplass, Kelly Cambre Bogart, Duplass, Zwain & Bourgeois, Metairie, LA, for The City of Kenner, Chief of Police Nick Congemi, Officer Michael Archuleta, Officer Russell Moran, Officer Bennie Bazley, and Fireman's Fund Insurance Company of Ohio, Defendants/Appellee.
Ernest L. O'Bannon, Christopher M. G'Sell, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, for Scottsdale Insurance Company, Intervenor/Appellee.
Philip Boudousque', Metairie, LA, for The City of Kenner, Chief of Police Nick A. Congemi, Officer Michael Archuleta, Officer Russell Moran, Officer Bennie Bazely, Defendants/Appellants.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, JAMES L. CANNELLA, THOMAS F. DALEY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
This case arises from an automobile accident that occurred on August 30, 1998, when Terrence King, who was driving a stolen Dodge Neon, disregarded a red light and struck a Honda Accord driven by Wilmareen James. The plaintiffs in this matter are the occupants of the Honda Accord and the survivors of the occupants who tragically died as a result of this accident. At the time of the accident, the vehicle driven by King was being followed by three police officers from the Kenner Police Department, namely Officers Archuleta, Moran, and Bazley, in police units.
The plaintiffs filed suit against the City of Kenner, Kenner Police Chief Nick Congemi, and the three officers who were following Mr. King at the time of the accident ("the Kenner defendants"), as well as Scottsdale Insurance Company and Fireman's Fund Insurance Company of Ohio. The Kenner defendants filed a Motion for Summary Judgment asserting that they are not liable for the damages in this case because the accident was caused solely by the negligence of Terrence King, not the Kenner defendants. After a hearing, the trial judge denied the Kenner defendants' Motion for Summary Judgment, stating that he was unable to determine if the officers' pursuit of Mr. King complied with the policies of the Kenner Police Department and if the accident would have occurred if Mr. King had not been pursued in this manner.
*43 The Kenner defendants sought review of this ruling by filing a writ application, No. 01-C-1345, with this Court, but the application was denied on December 13, 2001 in a 2-1 decision. The Kenner defendants filed a writ application, No.2002-CC-0105, with the Louisiana Supreme Court, which was granted. The matter was remanded to this court for briefing, argument, and opinion. Jones v. Congemi, 02-0105 (La.4/12/02), 812 So.2d 659.[1]
This Court rendered an opinion granting Summary Judgment in favor of the Kenner defendants and dismissing them from this lawsuit on October 16, 2002. However, the plaintiffs filed a writ application, No. 02-C-2779, from this ruling with the Louisiana Supreme Court, and it was granted on January 24, 2003. Jones v. Congemi, 02-2979 (La.1/24/03), 840 So.2d 525. The Supreme Court vacated the summary judgment pertaining to the Kenner defendants' liability and remanded the matter to this Court to consider this issue once again, after briefing and argument by the parties. Oral argument was held before a five-judge panel of this Court on April 2, 2003, and the matter was once again submitted.

FACTS
On the morning of August 30, 1998, Officer Archuleta of the Kenner Police Department was on patrol in the area of the 100 block of Airline Drive when he noticed a green Dodge Neon traveling east on Airline Drive. The vehicle appeared to be speeding, so Officer Archuleta pulled onto Airline Drive and began to follow the Neon while remaining about 1½ to 2 car lengths behind it. While following the Neon, Officer Archuleta confirmed that it was traveling at approximately 55 miles per hour in a 45 mile per hour zone. As they reached the overpass just west of the New Orleans airport, Officer Archuleta activated the overhead lights on his police unit. Mr. King reduced his speed to about 40 miles per hour, which was the proper speed limit on that portion of Airline Drive, but did not pull over.
Mr. King stopped at a red light at the intersection in front of the airport, and Officer Archuleta began "popping" his siren in order to get Mr. King's attention. However, Mr. King did not pull over and, when the light turned green, he continued to drive down Airline Drive at the posted speed limit, 40 miles per hour. Both Mr. King and Officer Archuleta stopped at the next red light, which was at the intersection of Hollandey and Airline. Officer Archuleta notified the radio dispatcher for the Kenner Police Department that he was following a vehicle that was stopping for all of the traffic signals, but would not pull over. He further asked the dispatcher to have registration and stolen vehicle checks performed.
When the light at Hollandey turned green, Mr. King continued to proceed down Airline, moved to the left lane, and continued traveling within the speed limit until he reached a red light at the intersection of Williams Boulevard and Airline, where he and Officer Archuleta stopped once again. At this intersection, two other Kenner police units, driven by Officers Russell Moran and Bennie Bazley, arrived, after hearing on the radio that Officer Archuleta was following a vehicle that *44 would not pull over. Officer Bazley positioned his police unit southbound on Williams Boulevard, pointed toward Airline, and Officer Moran positioned his vehicle in the intersection, blocking the eastbound left lane of travel and part of the eastbound right lane of travel on Airline Drive, which was just ahead of Mr. King and Officer Archuleta who were stopped at the red light at this intersection. Both police units had their overhead lights on, but neither police unit had its siren on.
Officer Archuleta exited his vehicle and approached the Neon driven by Terrence King. When he reached the back bumper of the Neon, Mr. King drove around Officer Moran's vehicle and proceeded down Airline Drive, even though the light at Williams was still red. Officers Bazley, Moran, and Archuleta followed Mr. King, proceeded through the next intersection, which was controlled by a green light, and approached the next intersection at Roosevelt, which had a red light. Mr. King did not stop for the red light and, after passing through this intersection, began to increase his speed. According to the officers, Mr. King continued to travel at a normal rate of speed until he "coasted" through the light at Roosevelt. It was at that point that his speed picked up. The officers activated their sirens and continued to follow Mr. King.
As Mr. King approached the next intersection at a high rate of speed, which was at North Atlanta/Wilkerneal and Airline, the traffic light turned red, but Mr. King did not stop. The Neon driven by Mr. King struck a black Honda that was crossing Airline at that intersection. The elapsed time between when he "coasted" through the Roosevelt intersection and struck the Honda at North Atlanta/Wilkerneal was very brief. As a result of the collision, four of the occupants of the Honda, which was driven by Wilmareen James, perished, and the other four occupants were seriously injured. After the accident, Terrence King fled on foot. However, he was apprehended shortly thereafter by Officers Bazley and Archuleta.

DISCUSSION
Appellate courts review summary judgments de novo, using the same criteria applied by the trial court to determine whether a summary judgment is appropriate. Magic Moments Pizza, Inc. v. Louisiana Restaurant Ass'n., 02-160 (La.App. 5 Cir. 5/29/02), 819 So.2d 1146, 1149; Carr v. Wal-Mart Stores, Inc., 00-896 (La.App. 5 Cir. 10/31/00), 772 So.2d 865, 866, writ denied, 00-3247 (La.1/26/01), 782 So.2d 636. Summary judgments are now favored in the law and the rules should be liberally applied. Nutt v. City of Gretna, 00-1864 (La.App. 5 Cir. 5/16/01), 788 So.2d 617, 619. LSA-C.C.P. art. 966 provides that a summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, establish that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. Prince v. K-Mart Corp., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248. A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action. Elmwood MRI, Ltd. v. Paracelsus Pioneer Valley Hosp., Inc., et al., 01-764 (La.App. 5 Cir. 12/26/01), 806 So.2d 743, 747.
In their Motion for Summary Judgment, the Kenner defendants argue that they are not liable in this case because the accident was caused solely by the actions of Terrence King, not the police officers or other Kenner defendants. The plaintiffs argue that the police officers violated their departmental policies regarding vehicle pursuits and that the accident would not have occurred if Officer Archuleta had discontinued his pursuit of Mr. King in accordance *45 with departmental policy. The plaintiffs further contend that this policy violation should be considered at trial when determining whether the police officers acted "reasonably" under the circumstances.
In Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, 1177, the Louisiana Supreme Court stated that law enforcement officers have the exclusive power to regulate traffic, and they are duty bound to exercise this power in a reasonable manner to protect people and to refrain from causing injury or harm. This duty requires a law enforcement officer to proceed in a manner that is reasonable under the circumstances, but this does not require the officer to choose the best or even a better method of approach. Id.
In the present case, Officer Archuleta testified that after he began to follow the Neon, Mr. King began to travel within the posted speed limit, but would not pull over. It was apparent that the vehicle or suspect required investigation because he would not pull over, but it did not appear that there was danger to the officer or the general public. The fact that Mr. King would not pull over would lead any reasonable person to be suspicious of the reasons for his actions. It was certainly reasonable for Officer Archuleta to continue following Mr. King at this time. If a person commits a traffic violation and refuses to stop for the police, he certainly should not be permitted to drive away and avoid any consequences because he successfully avoids being stopped. Is it reasonable for the police to turn on their lights and sirens to stop a traffic violator and then terminate the attempted stop simply because the operator of the offending vehicle ignores the officer and does not stop within a few hundred feet, but continues to drive, obeying all traffic and other laws from that point on? We think not.
After receiving assistance from Officers Bazley and Moran, who set up a roadblock at the intersection of Williams and Airline, Officer Archuleta got out of his vehicle and began walking toward the Neon. At this time, Mr. King drove around the roadblock and proceeded eastbound on Airline, eventually striking the Honda Accord driven by Wilmareen James. The officers had no way of knowing that Mr. King would suddenly change from low speed to high speed, and it would have been unreasonable for the officers to stop following him at that point. The possible reasons why Mr. King would not stop during this odyssey are endless. He could have had contraband in the vehicle, a dead body, or even a rape or kidnap victim in the vehicle. There was no way for the officers to know. The officers would have acted unreasonably to discontinue following a person who acted as Mr. King did. To terminate their attempts to stop Mr. King could have exposed the officers and their department to liability if Mr. King had injured someone after they let him go, which is something clearly foreseeable considering his bizarre behavior.
In McElreath v. Progressive Insurance Co., 595 So.2d 693 (La.App. 5 Cir.1992), writ denied, 596 So.2d 557 (La.1992), two police officers noticed a motorcycle that was being operated in a reckless manner. The officers followed the motorcycle for one and one-half miles, while the motorcycle continued to increase its speed, failed to obey traffic signals, and eventually struck another vehicle at an intersection. The plaintiffs filed suit against the police officers and the Gretna Police Department, alleging that the officers were negligent in their pursuit of the driver of the motorcycle. However, the trial court granted and this Court affirmed a summary judgment in favor of the Gretna Police Department, finding that the police officers were not *46 negligent. This Court found that the undisputed facts established that the officers acted with due regard for the safety of all persons in attempting to stop the motorcycle and that the accident was caused by the driver of the motorcycle, not the police officers. Id. at 695.
In the present case, the undisputed facts indicate that the officers' actions in continuing to follow Mr. King, after he refused to stop were reasonable. Although it is extremely unfortunate that the accident in this case resulted in the tragic death of four people and serious injuries to four others, it was not the police officers who struck the vehicle driven by Ms. James and their actions did not cause the accident. The accident was clearly caused by the criminal actions of Terrence King, not the Kenner defendants.
The plaintiffs argue that the officers violated the Kenner Police Department policies on vehicular pursuits when they followed Mr. King. They contend that the officers escalated an attempted routine traffic stop into a dangerous high-speed chase, in violation of departmental policies, and this accident would not have happened if the police had not done so. They contend that the issue of whether the officers violated the policies of the Kenner Police Department is material to the outcome of this case, and therefore, this disputed issue precludes summary judgment. After hearing argument on the Motion for Summary Judgment, the trial judge found that the issue of whether the officers violated the policy on vehicular pursuits is a factor to consider when determining whether or not the officers breached a duty owed to the plaintiffs. He indicated that he did not believe summary judgment was proper without additional facts indicating if the policy was violated or not. We disagree.
The Kenner Police Department Operations Manual defines "vehicular pursuit" as "when officers attempt to apprehend a suspect who is purposely evading capture by operating a motor vehicle in violation of traffic laws governing direction of travel, speed of travel, traffic signs and signals and/or other illegal actions." The manual defines "High-Speed/High-Risk Vehicle Pursuit" as:
An active attempt by a Kenner Police Officer, in an authorized emergency equipped and designated pursuit vehicle, to apprehend fleeing suspects who are using excessive speed or committing a hazardous violation (i.e., going the wrong way on a one-way street, etc.) to avoid apprehension through evasive tactics and failing to stop when approached by the Department authorized emergency vehicle utilizing simultaneous emergency warning equipment.
"Low-Speed /Low-Risk Vehicle Pursuit" is defined as:
An active attempt by a Kenner Police Officer, in an authorized emergency equipped and designated pursuit vehicle, to apprehend fleeing suspects who are not utilizing excessive speed or committing a hazardous moving violation to avoid apprehension by ignoring and failing to stop when approached by the Department authorized emergency vehicle utilizing simultaneous emergency warning equipment.
The manual further provides in DR 3-5.1, Section IX, entitled "Termination Criteria," in part as follows:
A low-speed, low-risk or high-speed, high-risk pursuit SHALL be immediately terminated AT ANY TIME the danger posed to the general public, the officer(s) or the fleeing suspect is greater than the benefit of continuing the pursuit and apprehending the suspect. The termination of a pursuit does not prohibit the following of a vehicle at a safe speed, or remaining in an area to *47 re-initiate pursuit if the opportunity and conditions permit. (Emphasis added).
FSOP 7-15, Part 9 of the Kenner Police Department's Operations Manual sets forth the procedure for routine vehicle stops. It provides in part:
1. ROUTINE VEHICLE STOPS will be performed when an officer in an authorized emergency vehicle or a pursuit vehicle, as defined in Part 4 of this procedure, attempts to stop a vehicle after articulable facts indicate that said vehicle or suspect requires investigation and the officer has concluded that the stop does not present danger to the officer, the general public or to the suspect(s). If the driver of the suspect vehicle responds to the emergency equipment (emergency lights and/or siren) and stops within approximately 400 yards (or a cumulative distance of approximately 4 city blocks) of the initiation of the attempt to stop the vehicle, then the officer has performed a ROUTINE VEHICLE STOP. No attempt to flee from the officer's emergency equipped vehicle occurred.
3. In the event an attempt to conduct a routine traffic stop for minor traffic or misdemeanor offense or suspicious activity does not result in compliance within the designated "stop zone," the officer should disengage the attempt to stop the vehicle and may begin trailing the vehicle. (Emphasis added.)
Officer Archuleta stated that the majority of the time that he followed Mr. King, they were both traveling within the speed limit. It was not until shortly before the accident that Mr. King picked up speed. The department policy permits following a vehicle at a safe speed. Furthermore, although Mr. King did not pull over in the required "stop zone," the department manual allows the officer to begin "trailing" the vehicle in such a situation. The parties disagree as to whether the officers "trailed" Mr. King or "chased" him at a high rate of speed. However, we find that this issue is not a genuine issue of material fact which precludes summary judgment.
Even if the officers had deviated from the policies of the Kenner Police Department, we find that the undisputed material facts establish that the officers' actions were reasonable. Policies and regulations should indeed be followed and corrective action may be taken by the police department when an officer fails to comply with the department's regulations. However, when determining the scope of duty owed by law enforcement officers and whether such duty was breached, the legal question is whether or not a police officer's actions were reasonable, not whether he complied with departmental policies.
Considering the circumstances of the case before us, we find that the undisputed facts establish that the officers' action in following Mr. King were reasonable. Therefore, we find that the trial judge was incorrect when he denied the Motion for Summary Judgment filed by the Kenner defendants on the issue of liability, and we reverse this ruling of the trial court. Accordingly, we grant summary judgment in favor of the Kenner defendants, finding that they were not liable for the accident and tragic consequences in this case, and we dismiss them from this lawsuit.
REVERSED; SUMMARY JUDGMENT GRANTED IN FAVOR OF THE KENNER DEFENDANTS.
DALEY, J., dissents with reasons.
I respectfully dissent from the majority opinion.
*48 Plaintiffs assert that in pursuing King, the officers were in violation of several policies of the Kenner Police Department's Operations Manual relating to pursuit of vehicles. Plaintiffs argue that the officers owed a duty to the plaintiffs not to escalate an attempted routine traffic stop into a fatal high-speed chase. The policy manual states in pertinent part that pursuit "beyond a low-risk attempt to initially stop a vehicle, is justified only as when there is the commission of a serious felony by the occupant(s), or when the occupants, by their actions, present an immediate threat to the public." In the record before us there was no proof the King had committed serious felony or presented an immediate threat to the public.
Attached to plaintiff's opposition is an affidavit from Ken Katsaris, an expert in law enforcement policy and procedures involving traffic stops and vehicle pursuits. Mr. Katsaris states that the Kenner officers failed to comply with their own departmental policies and with the applicable national standards relative to pursuits and traffic stops. He concludes "it is reasonable to believe from pursuit experience that if the pursuit had terminated as directed by the City policy, this accident would not have occurred."
In Independent Fire Ins. Co. v. Sunbeam Corp., 1999-2181 (La.2/29/00), 755 So.2d 226 at 236, the Court stated: "If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial."
Whether the Kenner police were pursuing the Neon at a high rate of speed or trailing the vehicle in compliance with departmental policy, is a disputed issue of material fact. Resolution of this fact could affect the trier of fact's determination as to causation. For this reason, I find the trial court correctly denied the Kenner defendant's Motion for Summary Judgment on the issue of liability. I would remand to the trial court for a full trial on the merits.
NOTES
[1] This writ application, no. 01-C-1345, was consolidated with an appeal filed in this Court, Jones, et al. v. Congemi, et al., no. 02-CA-148 c/w 02-CA-149. However, this Court rendered an opinion addressing the issues set forth in the appeal, and the Louisiana Supreme Court thereafter denied writs on these issues. Accordingly, this opinion applies only to the merits of the original writ application, no. 01-C-1345, which concerns the liability of the Kenner defendants.