# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 06-680


**KATHI BROOKS, INDIVIDUALLY AND ON BEHALF OF HER MINOR DAUGHTER, NICOLE BENDILY**

**VERSUS**

**CITY OF JENNINGS, JENNINGS POLICE CHIEF MERRION S. TAYLOR, LT. D. DAIGLE 231, PTN. C. ROMERO 538 and DET. K. CLEMENT 423**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-688-04
HONORABLE WENDELL R. MILLER, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## ELIZABETH A. PICKETT
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**


**Joseph F. Gaar  Jr.**
**Jason M. Welborn**
**Attorneys at Law**
**P. O. Box 2053**
**Lafayette, LA 70502**
**Counsel for Plaintiff/Appellant:**
     **Nicole Bendily**

**John F. Wilkes**
**Lisa E. Mayer**
**Joy C. Rabalais**
**Libby Heinen**

**Borne & Wilkes, L.L.P.**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**Counsel for Defendants/Appellees:**
  **City of Jennings**
  **Chief Merrion S. Taylor**
  **Lt. Damon Daigle**
  **Det. Keith Clement**
  **Officer Chad Romero**

**PICKETT, Judge.**

The plaintiff, Nicole Bendily[1], appeals the granting of a motion for summary judgment filed by the defendants, the City of Jennings; Chief Merrion S. Taylor, in his official capacity as Chief of Police for the City of Jennings; and Detective Keith Clement, Lieutenant (Lt.) Damon Daigle, and Officer Chad Romero, all in their official capacities as police officers for the City of Jennings (collectively, the defendants). Pursuant to the granting of the defendants' motion, the plaintiff's suit was dismissed with prejudice, at her costs. This appeal followed.

## FACTS

The facts in this case are not in dispute. In the early morning hours of December 9, 2003, officers from the City of Jennings Police Department engaged in a high-speed chase of the plaintiff, Nicole Bendily. The chase ended when the plaintiff lost control of her vehicle. The vehicle left the roadway and rolled over. The plaintiff was ejected and sustained serious injuries.

Subsequently, suit was filed by the plaintiff seeking damages for injuries sustained. In due course, the defendants filed a motion for summary judgment which was granted by the trial court. The plaintiff, then, filed this appeal. We affirm the judgment of the trial court.

## LAW AND DISCUSSION

The law applicable to the appellate review of summary judgments is well settled.

---

[1] The petition was originally filed by the "plaintiff, Kathi Brooks, individually, and on behalf of her minor daughter, Nicole Bendily*, a person of the full age of majority*" seeking damages (emphasis ours). In January 2005, the plaintiffs noticed their mistake and Nicole Bendily was substituted as the sole plaintiff.

1

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); *Yarbrough v. Federal Land Bank of Jackson*, 31,815 (La.App.2d Cir. 03/31/99), 731 So.2d 482. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); *Leckie v. Auger Timber Co.*, 30,103 (La.App.2d Cir. 01/21/98), 707 So.2d 459. The burden of proof remains with the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense but may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. *See*, La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.

Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Kennedy v. Holder*, 33,346 (La.App.2d Cir. 05/10/00), 760 So.2d 587.

*Semien v. EADS Aeroframe Servs., LLC*, 04-760, pp. 1-2 (La.App. 3 Cir. 2/2/05), 893 So.2d 215, 216-17 (quoting *Sidwell v. Horseshoe Entm't Ltd. P'ship*, 35,718, pp. 2-4 (La.App. 2 Cir. 2/27/02), 811 So.2d 229, 230-31).

The record reveals that at 6:30 a.m., Mrs. Kathi Brooks, the mother of plaintiff, Nicole Bendily, called the Jennings Police Department and reported that "my daughter took my car." When asked to clarify what she meant by the phrase "my daughter took my car," Mrs. Brooks stated "she stole my car." At the time Mrs. Brooks made the call she was in a vehicle following Nicole and called to request

2

police intervention to stop Nicole. Mrs. Brooks explained that Nicole was due to leave with the family that morning to begin drug "rehab," but that she didn't want to go, so she took the car and drove off. Mrs. Brooks and another party followed in a second vehicle. Nicole's father got into a third vehicle to begin a search for Nicole. A Jennings Police Department (the P.D.) unit, driven by Patrolman (Ptn.) Chad Romero, was dispatched to the last place Nicole had been seen and started a search for Nicole. Lt. Damon Daigle, who took the initial call from Mrs. Brooks, left the station to join the hunt.

At 6:50 a.m., Mrs. Brooks, who was in a Grand AM, again called the P.D. and reported that she had spotted Nicole heading south on South Main Street. Mrs. Brooks followed her as Nicole turned east on Park Street and then north on South Cutting Street. At that time, Lt. Daigle was proceeding south on South Cutting Street. He spotted Nicole and fell in behind her, activating his emergency lights and siren. Nicole accelerated, turned east on U.S. Highway 90 and then north on South Louise Street. Lt. Daigle, who was in pursuit, estimated Nicole's speed to be in excess of 60 m.p.h. By this time, Ptn. Romero had fallen in behind Lt. Daigle. When asked about Nicole's ability to handle her vehicle at high speed, Lt. Daigle stated that "[s]he was fairly good." When pressed on the issue he said: "She actually showed remarkable handling of a vehicle that heavy [Nicole was driving a Toyota Avalon]." The pursuit continued north on South Louise, then west on East Nezpique, north again on Ruland, then west on East Academy, south again on North Morton Street, and west on Granger, back toward U.S. 90. She then turn north on Market to East Main, then west on East Academy toward La. Hwy. 26 (South Lake Arthur Road). She crossed Hwy. 26, then turned south on North Doyle Street. At that point, because Nicole's speed

3

had increased to near 100 m.p.h. and because she was running "STOP" signs, Lt. Daigle terminated pursuit and they lost sight of Nicole's vehicle. This was at approximately 6:56 a.m.

Mrs. Brooks called the P.D. again at 6:57am to report that her husband was in pursuit of Nicole, heading south on the Lake Arthur Highway (La. Hwy. 26) at over 100 m.p.h. About two minutes later, Patrolman Romero reported that he had Nicole's vehicle in sight headed north on La. Hwy. 26, just south of La. Hwy. 1126, and that he was re-initiating pursuit. Nicole turned east on La. Hwy. 1126. As Nicole approached Castex Landing Road, she lost control of the vehicle and was ejected as the vehicle rolled over.

Several times on the voice log, one can hear Lt. Daigle warning his officers to be careful and to "back off" if the situation became too dangerous. One can also hear a comment to the effect that Nicole was having trouble handling her vehicle. At several places one can hear pursuing officers reporting they did "back off" when they felt the situation warranted more caution.

The linchpin of this case can be found in the provisions of La.R.S. 32:24:

> A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
>
> B. The driver of an authorized emergency vehicle may:
>
> (1) Park or stand, irrespective of the provisions of this Chapter;
>
> (2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
>
> (3) Exceed the maximum speed limits so long as he does not endanger life or property;

4

(4) Disregard regulations governing the direction of movement or turning in specified directions.

C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

The defendants rely on Sections A, B, and C of the statute to exonerate them from liability, while the plaintiff claims the defendants are liable under Section D of the statute. The plaintiff also argues the defendants should be held liable for their failure to strictly adhere to Jennings Police Department policy governing pursuit.

In *Lenard v. Dilley*, 01-1522, pp. 6-7 (La. 1/15/02), 805 So.2d 175, 180, the supreme court concluded that La.R.S. 32:24 contains two alternate standards of care for use in deciding the fault or lack thereof of drivers of emergency vehicles:

La.Rev.Stat. 32:24(D) sets out two standards of care for an emergency vehicle driver depending on the circumstances of the case. If, and only if, an emergency vehicle driver's actions fit into subsections A, B and C of La.Rev.Stat. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by a standard of "due care."

"Due care" is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Gross negligence has been defined by this court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise." *State v. Vinzant*, 200 La. 301, 7 So.2d 917 (1942). "Reckless disregard" or "gross negligence" is the standard to be applied if the emergency vehicle driver's actions fit La.Rev.Stat. 32:24(A) through La.Rev.Stat. 32:24(C). Otherwise, the standard is ordinary negligence.

5

Thus, if the provisions of subsections A, B and C of La.Rev.Stat. 32:24 apply to the accident or incident in question, then the driver will be held liable only for his conduct which constitutes reckless disregard for the safety of others.

In the case sub judice, the actions of the Jennings Police Officers clearly fell under subsections A, B, and C of La.R.S. 32:24. One can clearly hear their sirens on the CD of the radio log and the testimony in the officers' depositions confirms that the pursuing units were using their lights and sirens. Thus the actions of the officers in this case must be judged under the "reckless disregard" or "gross negligence" standard.

The plaintiff argues that, even under "reckless disregard" or "gross negligence" standard, the officers should be found liable for their failure to strictly adhere to department policy governing pursuit. The courts disagree. In determining whether an officer breached his duty to a particular plaintiff, the issue to be decided is not whether the office failed to comply with department policy, but rather was the course of action he pursued reasonable under the totality of the circumstances. *Courville v. City of Lake Charles*, 98-73 (La.App. 3 Cir. 10/28/98), 720 So.2d 789; *Jones v. Congemi*, 01-1345, 02-148, 02-149 (La.App. 5 Cir. 5/13/03), 848 So.2d 41, *writ denied*, 03-1647 (La. 10/10/03), 855 So.2d 354.

Police officers have the duty of maintaining peace and order, preventing and detecting crime, and enforcing laws. *Zeagler v. Town of Jena*, 556 So.2d 978 (La.App. 3 Cir.), *writ denied*, 560 So.2d 14 (La.1990). The duty is owed to the public in general but may be transformed into a duty to an individual where a personal or individual relationship arises between the officer and an individual through closeness in proximity or time. *Id.* Generally, a police officer, in carrying out his authority to enforce laws, has the duty to act reasonably to protect life and limb, to refrain from causing injury or harm, and to exercise respect and concern for the well-being of those whom he is employed to protect. *Keller v. City of Plaquemine*, 96-1933 (La.App. 1 Cir. 9/23/97); 700 So.2d 1285, *writ denied*, 97-2635 (La.1/16/98); 706 So.2d 977. The supreme court has addressed the duty owed by an

6

officer when approaching a subject prior to disarming him or effectuating an arrest. *See Stroik* [*v. Ponseti*, 96-2897 (La. 9/9/97)], 699 So.2d 1072; *Mathieu v. Imperial Toy Corp.*, 94-0952 (La.11/30/94); 646 So.2d 318; *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977). In such cases, the duty is one of reasonableness under the totality of the circumstances. *See id.* We note that *Stroik*, *Mathieu*, and *Kyle* involved the issue of excessiveness of force, and we find the pursuit issue sufficiently analogous to allow application of the standard employed in those cases. In *White v. City of Baker*, 95-2009 (La.App. 1 Cir. 5/17/96); 676 So.2d 121, *writ denied*, 96-1547 (La.9/27/96); 679 So.2d 1351, the first circuit held that the same standard was applicable in a situation in which an officer was attempting to apprehend an individual who disobeyed a police order and was fleeing from the officer, which ended with the fleeing vehicle overturning and killing a guest passenger. . . . . In any event, the same standard of reasonableness should apply, albeit with the application of different factors [in different situations]. Thus, we will analyze the duty issue in terms of reasonableness under the totality of the circumstances. We note that the officer's actions need not be the "best" method of approach; rather, the standard of care requires choosing only a course of action that is reasonable under the circumstances. *See Mathieu*, 646 So.2d 318.

*Courville*, 720 So.2d at 797-98.

In the case before us, one finds an impaired teenager driving recklessly, at excessive speeds through the City of Jennings. She is not only being pursued by the police, but also by both her mother and father, in separate vehicles. It was simply a matter of time until someone got hurt. Fortunately, no one was killed and no innocent bystander sustained injury. Considering the totality of the circumstances, we find the police involved in the pursuit used great restraint and that their conduct was neither reckless nor grossly negligent. If anything, their actions reflected due care for the safety of the citizens of Jennings and the parties involved in the pursuit. The officers discontinued the chase at one point and "backed-off" at other points when the situation became too dangerous. The last place they backed off was at the junction of La. Highways 102 and 1126, just seconds before the crash.

7

When Ms. Bendily left the Jennings city limits headed south toward Lake Arthur on La. Highway 26, no police were in pursuit. It was her father who was chasing her at speeds estimated to be in excess of 100 m.p.h. The Jennings police department did not re-join the pursuit until 6:59 a.m. when she was spotted at the junction of La. Highways 26 and 1126. The crash occurred approximately two minutes later on La. Highway 1126 at Castex Landing Road

In sum, we conclude that although the officers may not have followed the best course of action, that, under the circumstances, the course of action followed was reasonable. Furthermore, we find the plaintiff has failed to set forth any specific facts showing a genuine issue of material fact for trial.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the appellant.

**AFFIRMED.**