NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-837

GWENDOLYN MARTIN

VERSUS

LOUISIANA MUNICIPAL RISK MANAGEMENT,
CITY OF EUNICE, AND JACOB HANKS

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 13-C-1937-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Phyllis M. Keaty, Judges.

AFFIRMED.

**Christian D. Chesson**
**Attorney at Law**
**One Lakeshore Drive, Suite 1800**
**Lake Charles, Louisiana  70629**
**(337) 436-5297**
**Counsel for Plaintiff/Appellant:**
      **Gwendolyn Martin**

**Jerry J. Falgoust**
**Falgoust and Caviness, LLP**
**Post Office Box 1450**
**Opelousas, Louisiana  70571-1450**
**(337) 942-5812**
**Counsel for Defendants/Appellees:**
      **Louisiana Municipal Risk Management**
      **City of Eunice**
      **Jacob Hanks**

**KEATY, Judge.**

Plaintiff, Gwendolyn Martin, appeals the trial court's judgment in favor of Defendants, Louisiana Municipal Risk Management, City of Eunice, and Jacob Hanks. For the following reasons, the trial court's judgment is affirmed.

## FACTS & PROCEDURAL BACKGROUND

This personal injury matter arose out of a motor vehicle accident between a police vehicle and a vehicle driven by Plaintiff's son on April 28, 2012, at approximately 1:07 a.m. in Eunice, Louisiana. Prior to the collision, a dispatcher with the Eunice Police Department alerted on-duty police officers to a 911 call regarding an individual male who was driving a truck, dragging a female by the hair, and attempting to pull her. A high-speed chase ensued between the suspect and police officers, including Officer Jacob Hanks. Around the same time, Martin was a passenger in the vehicle being driven by her son, Chad Taylor. The accident at issue occurred when Officer Hanks' police unit and the Taylor vehicle collided at the intersection of Martin Luther King Drive (MLK Drive) and U.S. Highway 190. Martin allegedly sustained injuries and filed suit against Defendants. Following a bench trial on May 31, 2016, the trial court ruled in favor of Defendants based upon La.R.S. 32:24, the emergency vehicle statute. Judgment was signed on August 12, 2016, and Martin appealed.

On appeal, Martin asserts the following assignments of error:

1.  The trial court was clearly wrong when it found Officer Hanks was responding to an emergency call or was in the pursuit of an actual or suspected violator of the law.

2.  The trial court was clearly wrong when it did not find Officer Hanks breached his duty to drive with due regard for the safety of the driver and passengers of the Taylor vehicle.

3.    The trial court was clearly wrong when it failed to follow the dictates of [La.Civ.Code art.] 2323 which requires the trier of fact to determine "the degree or percentage of negligence of all persons causing or contributing to the injury."

4.    The trial court was clearly wrong when [it] did not determine Officer Hanks is liable for negligent conduct as the duty/risk analysis of [La.Civ.Code art.] 2315 must be applied.

5.    Because the trial court did not reach the issue of damages because of its finding for the defendants, disposing of this case, the appellate court, in reversing the judgment of the trial court, must make a de novo determination of undecided issues from the facts presented in the record.

## STANDARD OF REVIEW

This court, in *Edwards v. Geico Indemnity Company*, 14-606, pp. 5-6 (La.App. 3 Cir. 3/18/15), 167 So.3d 957, 961, discussed the applicable standard of review as follows:

A court of appeal will not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the trial court's findings are reasonable after reviewing the record, we will not reverse the trial court even if we may have decided differently had we been sitting as the trier of fact. *Id.* Further, reasonable credibility evaluations and inferences of fact cannot be manifestly wrong when there are conflicting testimonies. *Id.* "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993).

## DISCUSSION

Martin's first three assignments of error deal with the applicability of the emergency vehicle statute, La.R.S. 32:24, which provides, in pertinent part:

A. The driver . . . of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law . . . may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

B. The driver . . . of an authorized emergency vehicle may do any of the following:

2

. . . .

(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.

(3) Exceed the maximum speed limits so long as he does not endanger life or property.

(4) Disregard regulations governing the direction of movement or turning in specified directions.

C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle . . . is making use of audible or visual signals . . . sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.

The trial court found that Officer Hanks' actions satisfied the elements imposed by La.R.S. 32:24 based upon the evidence and testimony at trial. Such testimony included that of Katherine Papillion, who testified on Martin's behalf. Papillion said she was a dispatcher employed by the Eunice Police Department, who received a 911 call regarding a male dragging a female into his truck. She relayed the information to the police officers on duty, including Officer Hanks. Both the 911 telephone call log and the written report regarding the suspect were introduced into evidence.

Officer Michael Perry, also called at trial on behalf of Martin, testified he was the shift supervisor who received a dispatched call regarding an incident occurring on MLK Drive. Officer Perry activated his emergency lights and sirens and approached the scene where he saw the fleeing suspect. He began chasing the suspect, who was driving approximately eighty to ninety miles per hour, on MLK

3

Drive towards the intersection of Highway 190. Officer Perry noted that Officer Hanks attempted to block part of MLK Drive by parking his car sideways with his emergency lights activated. Officer Perry assumed that Officer Hanks' sirens were also activated because "we had ours on and we couldn't hear anybody else's." He later agreed, through his testimony, that Officer Hanks' lights and sirens were activated. Officer Perry noted that Officer Hanks moved his vehicle from the roadway when the suspect failed to slow down. Officer Perry, along with another police vehicle, had their lights and sirens activated as they chased the suspect through the intersection and headed north on MLK Drive.

Officer Perry said that their lights and sirens would have been seen and heard by anyone in the area. He noted that he slowed down to forty-five to fifty miles per hour when he crossed the intersection despite the suspect maintaining his same rate of speed. Officer Perry revealed that when lights and sirens are activated during a police pursuit, an officer can proceed at a higher rate of speed and travel through a red light using caution. According to his testimony, Officer Perry surmised Officer Hanks would follow and join the other police units in the pursuit.

Officer Ricky Romero also testified on Martin's behalf, stating that he was a police officer on patrol who received a dispatched call regarding the suspect. Officer Romero, Officer Brandon Dugas, Officer Perry, Lieutenant Jeremy Ivory, and Officer Hanks responded to this "[v]ery serious" call. Officer Romero's lights and sirens were activated as he proceeded east on Highway 190 towards the intersection with MLK Drive, as the suspect was on MLK Drive heading north towards Highway 190. He agreed that if the Taylor vehicle was simultaneously traveling east on Highway 190 towards MLK Drive, it would be heading in the same direction as him. Officer Romero indicated that if the Taylor vehicle

4

occupants saw police cars and sirens, they would have been close to Officer Romero. He said it was obvious that a pursuit was occurring given the bright emergency lights and loud sirens.

Officer Romero revealed that when he approached the intersection, he stopped along with other vehicles while the suspect's truck sped through and continued north across Highway 190 at approximately 100 miles per hour. This was contradicted by Martin's trial testimony that she did not see Officer Romero's vehicle stop on Highway 190. Officer Romero testified that the suspect was being pursued by two police units although he was unsure whether the traffic light was red or green when they crossed over. Officer Romero made a left turn, headed north on MLK Drive behind two police cars, and chased the suspect with his lights and sirens activated. He was uncertain whether the light was red or green when he turned left, but noted that a pursuing police vehicle can exceed the speed limit, run a red light, or run through an intersection using caution.

Lieutenant Ivory, who was a sergeant at the time of the incident, also testified on Martin's behalf. He received the dispatched call while at a traffic stop on Highway 190 and South Fourth Street and thereafter traveled east on Highway 190 with his lights and sirens activated. As he neared the intersection with MLK Drive, he saw "patrol units" with their lights activated. He saw the lights from approximately a mile away. Lieutenant Ivory could not say whether the other police units' sirens were activated because his windows were up and his siren was on. Upon arrival at the intersection, he saw Officer Hanks' vehicle with his emergency lights activated and the Taylor vehicle in the roadway. Lieutenant Ivory was unaware that the two vehicles had collided and as such, proceeded left

5

onto MLK Drive and drove north in pursuit of the suspect. At that point, he heard Officer Hanks on the police radio advise of the collision and returned to assist him.

Lieutenant Ivory testified that upon arrival, the two cars involved in the collision had moved to the parking lot of Teche Federal Bank. He said that Martin was a passenger in the Taylor vehicle along with two other people. In connection with Lieutenant Ivory's investigation, Officer Hanks told him that the light was green as he approached the intersection, although it turned red before he reached it. Officer Hanks informed Lieutenant Ivory that he had slowed down to approximately ten miles per hour when the collision occurred. Lieutenant Ivory also spoke to Taylor, who advised that he saw the suspect's truck speed through the intersection. Lieutenant Ivory said that Martin intervened and revealed that everyone in their vehicle witnessed the speeding suspect and several police cars with their lights and sirens activated. Martin told Lieutenant Ivory that she instructed Taylor to slow down, although Taylor advised that he continued moving forward at a slower rate of speed. According to Lieutenant Ivory's testimony, Taylor and Martin said they were aware of the police chase. He revealed that all parties in the Taylor vehicle, including Martin, were uninjured and continued their journey after the collision.

The accident report memorializing the investigation was offered into evidence at trial and confirms Lieutenant Ivory's testimony. The report reveals that Officer Hanks' "front driver side bumper" collided with the Taylor vehicle, "causing moderate damage to the rear passenger side door of the [Taylor] vehicle."

Martin's trial testimony indicates that she was in the Taylor vehicle heading east on Highway 190 when she heard sirens and saw police cars chasing the suspect through the intersection with MLK Drive. The police units' sirens and

lights, which she saw from approximately a half mile from the collision site, prompted her to instruct Taylor to slow down and pull over. She said that Taylor pulled over but kept going when a "Eunice Police Department" vehicle passed them on Highway 190 and headed east with its lights and sirens activated. After the Taylor vehicle stopped at a red light, the light turned green, and they pulled out when Officer Hanks' unit collided with them. She testified that Officer Hanks said, "'I'm sorry, I'm in the wrong[;]'" however, this is contradicted by Officer Hanks' trial testimony that he never admitted fault to Martin. Martin also said that Officer Hanks "left us to the bank and went and came back." Officer Hanks, however, testified that he never left the accident scene; rather, he immediately checked on the occupants in the Taylor vehicle, who advised that they were okay.

When asked at trial whether Officer Hanks' lights and sirens were activated, Martin was unsure. She did not deny, however, that she may have said, in her previous deposition testimony, that Officer Hanks' lights were activated. In her July 23, 2013 deposition testimony, which was introduced into evidence at trial, Martin testified that Officer Hanks' car had flashing blue lights although she could not "remember hearing a siren." Martin further revealed at trial that she could not remember telling Dr. Ilyas Munshi that Officer Hanks' car had its emergency lights activated. She admitted, however, that if Dr. Munshi's deposition testimony indicated same, it was probably true. In Dr. Munshi's deposition testimony, which is dated May 24, 2016, and was entered into evidence at trial, he confirms that Martin admitted that Officer Hanks' emergency lights were activated. Martin also testified that Officer Hanks was going fast at the time of the collision. Her testimony is contradicted, however, by a photograph of Officer Hanks' car which shows only a little crack in the left headlight. The photograph was placed into

7

evidence at trial. Her testimony is also refuted by Officer Hanks' trial testimony that he was going approximately ten miles per hour immediately before impact, although he further testified that "[i]t was later confirmed that the impact was twelve (12) miles an hour."

Officer Hanks testified at trial that he received the dispatched call as he was patrolling east on Highway 190. He activated his lights and sirens which remained on until after the collision. He was responding to an emergency situation which required activation of lights and sirens according to his testimony. Officer Hanks turned right on south MLK Drive and saw lights and sirens heading towards him, i.e., north on MLK Drive, in pursuit of the suspect. When he was about half of a block away from the intersection of Highway 190 and MLK Drive, he turned his vehicle to block the roadway. Officer Hanks moved his vehicle when the suspect, who was traveling extremely fast, failed to slow down. He stated that the other police units had their lights activated. As for whether their sirens were activated, Officer Hanks said, "when your siren is on you, you can't hear other sirens."

Officer Hanks noted that after the police pursuit passed him, he headed north on MLK Drive approximately four to five seconds behind the last police unit. As the suspect approached the intersection, he "never slowed down, and the light was red[,]" although it turned green "[r]ight when he got to the intersection." Officer Hanks, who was chasing the suspect, stated that when he "accelerated to get up, the light turned . . . yellow." Officer Hanks noted that, "I started to slow down, the light turned red and I couldn't stop a complete stop[,]" noting the shorter light cycle on MLK Drive during nighttime.[1] Officer Hanks testified that he did not see any vehicles to his left as he approached the intersection and reduced speed.

_____

[1] The accident at issue occurred at approximately 1:07 a.m.

8

Officer Hanks thereafter saw the Taylor vehicle and turned his vehicle to the right in an attempt to avoid a collision. The collision occurred, however, when Officer Hanks' left fender headlight area collided with the Taylor vehicle. Officer Hanks was adamant that his left turn signal light, and not his left bumper, hit the Taylor car. Officer Hanks advised that the occupants were not injured, and they refused ambulance service.

To determine whether the trial court manifestly erred, we will analyze the above testimony and evidence as it pertains to Subsections A, B, and C of La.R.S. 32:24. In that regard, La.R.S. 32:24(A) provides that "[t]he driver . . . of an authorized emergency vehicle" must be "responding to an emergency call, or . . . in the pursuit of an actual or suspected violator of the law[.]" In this case, the testimony and evidence satisfy the requirements of La.R.S. 32:24(A).

Louisiana Revised Statutes 32:24(B)(2) provides, in pertinent part, that the driver of an emergency vehicle may "[p]roceed past a red . . . signal . . . but only after slowing down . . . as may be necessary for safe operation." In this case, the testimony and evidence satisfy the requirements of La.R.S. 32:24(B)(2).

Louisiana Revised Statutes 32:24(C) provides that the emergency vehicle must "mak[e] use of audible or visual signals . . . sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle." Martin admitted to seeing police units with their lights and sirens activated while chasing the suspect across Highway 190. The lights and sirens prompted her to instruct Taylor to slow down and pull over. Martin's own deposition testimony further refutes her trial testimony that she could not recall whether Officer Hanks had his lights activated. Officer Hanks' testimony that his lights were activated is supported by Officer

9

Perry and Lieutenant Ivory's testimony. Officer Hanks testified that in his particular police vehicle, the sirens turn on simultaneously when the police lights are activated. As correctly noted by the trial court in its reasons for judgment, "It is implausible to think that an officer in a marked unit would respond to a high speed pursuit, attempt to set up a roadblock, and then to join the pursuit without activating his emergency lights and sirens." We, therefore, find that the testimony and evidence satisfy the requirements of La.R.S. 32:24(C).

When the requirements of La.R.S. 32:24 are satisfied, the applicable standard of care required by a police officer in an emergency situation is "reckless disregard." *Lenard v. Dilley*, 01-1522 (La. 1/15/02), 805 So.2d 175. If the requirements are not met, the officer's actions are governed by a standard of due care or ordinary negligence. *Id.* The supreme court explained:

> "Due care" is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Gross negligence has been defined by this court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise." *State v. Vinzant*, 200 La. 301, 7 So.2d 917 (1942).

*Id.* at 180.

In this case, the testimony and evidence reveals that the collision occurred during an emergency situation in the early morning hours when the sky was dark. Multiple officers, including Officer Hanks, were pursuing a fleeing suspect. As previously stated, Officer Hanks' testimony that his lights and sirens were activated is supported by other police officers' testimonies. Officer Perry noted that he could see other police units' lights from a distance. In that regard, the foregoing was noted by the trial court in its reasons for judgment:

10

Therefore, Officer Hanks' emergency lights should have been visible and his siren audible. If nothing else, there were also other lights and sirens in the area from the other officers. It was reasonable for Officer Hanks to assume that other motorists should have been able to see his lights and hear his siren. It was also reasonable for him to assume that other motorists would obey their duty to pull over and/or stop upon seeing those lights and/or hearing those sirens.[2]

We further note Officer Hanks' testimony that he attempted to stop at the red light at the intersection, which the trial court considered by stating:

> While Officer Hanks may have accelerated to try to get through the intersection, he also attempted to stop once the light turned red. He also attempted to take evasive action by turning to the right away from the Taylor vehicle. All things considered, Officer Hanks' actions do not constitute gross negligence nor "reckless disregard" for the safety of others.

We find that the testimony and evidence contained in the record support the trial court's conclusions.

The trial court also looked to jurisprudence in support of its conclusion, including *Lemonia v. Lafayette Parish Consolidated Government*, 04-1209 (La.App. 3 Cir. 2/2/05), 893 So.2d 925, which involved a collision between a motorist and a police vehicle while chasing someone in a stolen vehicle. The evidence and testimony revealed that the officer's lights were activated during the emergency. *Id.* The officer testified that he slowed down when traveling over the railroad tracks and that he tried to take evasive action to avoid the collision. *Id.* This court found that the plaintiffs failed to prove that the officer acted with reckless disregard. *Id.*

Similar to *Lemonia*, 893 So.2d 925, Officer Hanks testified that his lights and sirens were activated at the time of the accident. Officer Hanks slowed down

---

[2] The duty the trial court is referring to is found in La.R.S. 32:125, which governs a motorist's duty to slow down and/or pull over when faced with an approaching authorized emergency vehicle.

when the light turned yellow, he attempted to stop, and he took evasive action when turning his car right in an attempt to avoid the collision. Just as in *Lemonia*, the trial court in this case was within its authority to accept the testimony of Officer Hanks over that of Martin, and we find no manifest error in its so doing.

In *Brooks v. City of Jennings*, 06-680 (La.App. 3 Cir. 11/22/06), 944 So.2d 768, police officers engaged in a high speed chase with the suspect, who was driving recklessly through the city. Another panel of this court noted that "[i]t was simply a matter of time until someone got hurt." *Id*. at 774. We further held:

> Considering the totality of the circumstances, we find the police involved in the pursuit used great restraint and that their conduct was neither reckless nor grossly negligent. If anything, their actions reflected due care for the safety of the citizens of Jennings and the parties involved in the pursuit. The officers discontinued the chase at one point and "backed-off" at other points when the situation became too dangerous.

*Id*. This court stated that "although the officers may not have followed the best course of action . . . under the circumstances, the course of action followed was reasonable." *Id.*

Similar to *Brooks*, 944 So.2d 768, the suspect in pursuit by police in this case was driving recklessly at excessive speeds through Eunice. The evidence reveals that Officer Hanks showed restraint by slowing down at the intersection and turning to the right in an attempt to avoid the collision. Officer Hanks' conduct, therefore, was neither reckless nor grossly negligent just as in *Brooks*.

On the other hand, Martin cites *Spears v. City of Scott*, 05-230 (La.App. 3 Cir. 11/2/05), 915 So.2d 983, *writ denied*, 05-2478 (La. 3/31/06), 925 So.2d 1259, where this court utilized the ordinary negligence standard to determine liability after determining that the officer's siren on his unmarked police vehicle was insufficient to warn motorists of his immediate approach, in violation of La.R.S.

12

32:24(C). We stated that the police officer's actions also constituted gross negligence under La.R.S. 32:24(B), noting the trial court's finding that he "'punched' it after coming to a rolling stop at the intersection and that he did not continue to monitor traffic when he entered the intersection, even though he was traveling through the intersection against a red light." *Id.* at 991.

We find that *Spears*, 915 So.2d 983, is distinguishable as Officer Hanks was driving a marked police car in contrast to the unmarked police vehicle in *Spears*. The instant matter is also governed by the reckless disregard standard in contrast to the ordinary negligence standard used in *Spears*.

Given our finding that the trial court did not manifestly err in finding that the requirements of La.R.S. 32:24 were satisfied, we pretermit any discussion of Martin's remaining assignments of error.

## DECREE

The trial court's judgment in favor of Defendants, Louisiana Municipal Risk Management, City of Eunice, and Jacob Hanks is affirmed. All costs of this appeal are assessed to Plaintiff, Gwendolyn Martin.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.