United States Court of Appeals,

Fifth Circuit.

No. 93-5366.

STATE of Louisiana, Plaintiff-Appellee,

v.

PUBLIC INVESTORS, INC., et al., Defendants,

v.

Robert L. MARRERO, Trustee of the Bankruptcy Estate of Public Investors, Inc., Appellant.

Oct. 17, 1994.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

The State of Louisiana sued a bankrupt insurance holding company, and the company's bankruptcy trustee filed a counterclaim. The State voluntarily dismissed its claim against the company. The district court then dismissed the trustee's counterclaim against the state, holding it barred by the State's Eleventh Amendment sovereign immunity and by the statutory "discretionary function" exception from liability of La.Rev.Stat. § 9:2798.1. The trustee appeals the dismissal of his counterclaim. We find it unnecessary to look beyond the state statute to resolve this case, and we AFFIRM.

I.

The parties conducted little discovery, if any, before the district court dismissed this case. Most of the facts, however, are undisputed, because appellant Robert Marrero adopted the State's pleadings as his own against the other named defendants. The pertinent facts, as taken from the parties' joint pleadings, are as follows.[1]

Public Investors, Inc. is an insurance holding company. It is bankrupt, and appellant Marrero

---

[1]We take the allegations contained in the parties' joint pleadings as true in evaluating a dismissal of a claim. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984).

is its trustee. Public Investors engaged in several dubious financial transactions with some of its subsidiary companies and some of their officers. Some of those financial transactions were approved in advance by officials of the State. Marrero's counterclaim alleges that some State officials violated unspecified duties in approving the transactions. The two sets of transactions underlying Marrero's counterclaim are as follows.

First, in October 1989, Public Investors sold two of its wholly owned subsidiaries (Universal Guaranty Life Insurance Co. and Alliance Life Insurance Co.) to another corporation (First Commonwealth Corp.) for about $26 million in cash plus a $10 million promissory note. About $21 million of the proceeds of that sale was diverted to insurance companies outside the State of Louisiana.[2] About $13 million of the proceeds of the sale was diverted to another Louisiana company.[3]

Second, in a quick series of transactions over a period of about five months, Public Investors and the other defendants sold and resold a parcel of real estate to each other, inflating the price substantially each time. The property involved was Parkway Plaza, the site of an unfinished office building in San Antonio, Texas. On December 14, 1988, Hickory Development Corporation purchased Parkway Plaza from the FDIC for $11/2 million.

About one year after the initial purchase, the defendants conducted a quick series of repeated sales of Parkway Plaza. On November 30, 1989, Hickory Development sold the property to "Parkway Plaza Corp." or "Parkway Plaza, Inc." for $7 million. The buyer immediately resold the property on December 8, 1989 to Public Investors for $71/2 million. Public Investors sold the property on December 17, 1989 to Insurance Premium Assistance Corporation ("IPAC") for $10 million. IPAC reso ld the property two days later to Fidelity Fire & Casualty Insurance Co. ("Fidelity") for $10 million. On April 1, 1990, Fidelity sold Parkway Plaza to Southshore Holding

---

[2]Marrero's counterclaim alleges that, of the cash proceeds of the sale, "$21,113,356.00 was diverted to Kansas, Ohio and Nebraska insurance companies".

[3]More specifically, Marrero alleges that of the proceeds of the sale, "$12,846,162.00 ... was transferred to Midwest Life Insurance Company, then a Nebraska insurance company, which was later re-domesticated as a Louisiana insurance company, and which is now in a liquidation proceeding brought by the Insurance Commissioner of the State of Louisiana."

Corp. ("Southshore") for $13 million. Two days later, Southshore resold the property for $15 million to "Concord Capitol", which resold it that same day to Midwest Life for $17 million. Each of the buyers of Parkway Plaza was alleged to have been effectively a shell corporation owned or controlled by one or more of the named individual defendants. Defendants B.F. Shamburger and Gary Jackson were alleged to have "dominated the affairs" of the various defendant corporations. The defendants also allegedly engaged in a series of transactions involving resale of the various mortgage loans on Parkway Plaza that had accumulated during the course of transactions described above.

Public Investors filed its Chapter 11 bankruptcy petition on March 21, 1991. The case was converted to a Chapter 7 proceeding on May 20, 1991. On September 16, 1991, the State of Louisiana sued Public Investors and seventeen other defendants, including related corporations and some of their officers and directors, in Louisiana state court. The State sought a declaratory judgment that all the defendants constituted a "single business enterprise", an accounting of the various transactions engaged in and assets possessed by the defendants, and asked that any of the defendants' assets found to have been "improperly transferred, wasted, misapplied or misappropriated" be deposited into the registry of the court for "further disposition in accordance with law".[4] Marrero notes, we think correctly, that this demand for marshalling of the defendants' assets would have violated the automatic bankruptcy stay that protected Public Investors.

In response to the State's lawsuit, Marrero (1) removed the case to federal court under 28 U.S.C. §§ 1334 and 1441, (2) filed a crossclaim against the other defendants named in the State's complaint, adopting the state's pleadings as his own in the crossclaim, and (3) filed a $28 million counterclaim against the State. The counterclaim charged that unnamed officials of the Louisiana Department of Insurance[5] failed to perform their duties because they approved, or failed to prevent,

_____

[4]*Cf. Green v. Champion Ins. Co.,* 577 So.2d 249 (La.App.), *writ denied,* 580 So.2d 668 (La.1991). In *Green,* the liquidator *ad hoc* of an insolvent insurance company sought and obtained a declaration that the insolvent company and several related companies were a "single business enterprise", thereby making the assets of all the related companies available to satisfy the insolvent company's debts. *Green* was not complicated, as this case is, by the existence of a pending federal bankruptcy proceeding.

[5]The only official named in Marrero's counterclaim is "James H. "Jim' Brown, Commissioner of Insurance for the State of Louisiana, in his capacity as the Liquidator of Midwest Life Insurance

Public Investors's shady transactions at a time Marrero says they knew Public Investors was insolvent.[6] Marrero charges the State with a loss of some $21 million from the sale of Public Investors' subsidiaries, plus some $7 million from the Parkway Plaza transactions.

The State of Louisiana voluntarily dismissed its claims against Public Investors. The district court then involuntarily dismissed with prejudice Marrero's counterclaim against the State, and Marrero appealed.

II.

The district court rested its dismissal of Marrero's counterclaim on two alternative grounds. First, it concluded that the State of Louisiana's Eleventh Amendment immunity from suit in federal court barred the counterclaim, and the immunity had not been waived by the State or abrogated by federal law. Second, the district court concluded that the statutory "discretionary function" immunity of La.Rev.Stat. § 9:2798.1 barred Marrero's counterclaim.

When presented with two grounds for resolving a case, one statutory and the other constitutional in nature, we will address the statutory ground first and dispose of the case solely on that basis if possible.[7] In this case, the district court's dismissal of Marrero's counterclaim may be affirmed solely on the basis of La.Rev.Stat. § 9:2798.1, and accordingly, we do not reach the Eleventh Amendment issues.

A. "Discretionary Function" Immunity in Louisiana

In part, La.Rev.Stat. § 9:2798.1 provides:

(B) Liability shall not be imposed on public entities or their officers or employees based upon

Company".

[6]Marrero alleges that both the October 1989 transaction involving the sale of Public Investors's subsidiaries and the diversion of the proceeds, and the December 1989 transactions involving Parkway Plaza, were approved by "the State of Louisiana, through its various officials, agents and employees". Apart from Brown, Marrero has not identified any of the "officials, agents and employees" alleged to have failed in their duties.

[7]*See Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 272-73 (5th Cir.), *cert. denied,* 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316 (1989); *Jordan v. City of Greenwood, Miss.,* 711 F.2d 667, 669 (5th Cir.1983). *See generally Ashwander v. TVA,* 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-84, 80 L.Ed. 688 (1936) (Brandeis, J., dissenting in part), *reh'g denied,* 297 U.S. 728, 56 S.Ct. 588, 80 L.Ed. 1011 (1936).

the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

(C) The provisions of Subsection B of this Section are not applicable:

> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
>
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

The Supreme Court of Louisiana has said that § 9:2798.1 "is essentially the same as the exception in the Federal Tort Claims Act",[8] 28 U.S.C. § 2680(a).

In determining whether the discretionary function exception applies, the Louisiana courts follow the two-step analysis laid out by the U.S. Supreme Court in *Berkovitz v. United States.*[9] The first question is "whether the action is a matter of choice" for the government entity or employee.[10] "If no options are involved, the exception does not apply."[11] Therefore, for example, where a statute prescribes a certain course of action, the government employee has no discretion to ignore the statute's command, and "discretionary function" immunity offers no protection from liability.[12] By comparison, statutes that merely authorize or permit a course of action may provide some discretion to perform that action or not.[13]

If the government employee has some discretion, the inquiry proceeds to the second stage

---

[8]*Fowler v. Roberts,* 556 So.2d 1, 15 (La.1989) (on rehearing). The Louisiana cases rely freely on federal FTCA precedents in interpreting the state's discretionary function immunity statute. *See, e.g., id.; Rick v. State Dep't of Transp. & Dev.,* 630 So.2d 1271 (La.1994).

[9]486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *see Rick,* 630 So.2d at 1276.

[10]*Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958.

[11]*Rick,* 630 So.2d at 1276.

[12]*See Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958-59; *Russell v. Guillory,* 617 So.2d 213 (La.App.1993); *Valet v. City of Hammond,* 577 So.2d 155 (La.App.1991); *Tenhaaf v. Quenqui,* 571 So.2d 898 (La.App.1990); *Cf. Simeon v. Doe,* 618 So.2d 848, 852-53 (La.1993); *Kniepp v. City of Shreveport,* 609 So.2d 1163 (La.App.1992), *writ denied,* 613 So.2d 976 (La.1993).

[13]*See, e.g., DuBois v. McGuire,* 579 So.2d 1025, 1029 (La.App.), *writ denied,* 587 So.2d 696 (La.1991).

of the *Berkovitz* analysis, with the focus on whether the challenged conduct was an "action[ ] or decision[ ] based on considerations of public policy.... involv[ing] the permissible exercise of policy judgment".[14]  The Supreme Court has recently made it clear that the determination whether policy considerations are involved does not turn on the characterization of the challenged action as "operational" or not.[15]  "Decisions at an operational level can be discretionary if based on policy."[16] A policy decision is one that is "based on social, economic, or political concerns".[17]  There is a presumption that when government employees exercise discretion given to them by a statute or regulation, they are doing so based on the same policy concerns that animate the controlling statute or regulation itself.[18]  That presumption sets a high hurdle for a complaint to overcome when challenged with a motion to dismiss:

> For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.  The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the

---

[14]*Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1958 (citation omitted).  The Louisiana Supreme Court summarized this part of the inquiry by stating that "[i]f the action involves selection among alternatives, the court must determine whether the choice was policy based." *Rick,* 630 So.2d at 1276.

[15]*See United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

[16]*Rick,* 630 So.2d at 1276 (citing *Gaubert* ).

[17]*Bozeman v. Reed,* 633 So.2d 944, 956 (La.App.1994).  *Accord Fowler,* 556 So.2d at 15; *Simeon,* 618 So.2d at 853.

[18]The Supreme Court recognized this presumption in the *Gaubert* case, stating that:

> [I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.
>
> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

*Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274.

actions taken and on whether they are susceptible to policy analysis.[19]

## B. *Marrero's Counterclaim*

Tested against the standards described above, Marrero's counterclaim cannot survive the State's motion to dismiss.  The allegations of Marrero's counterclaim, which we take as true,[20] allege that "various State officials, agents and employees"—none of whom are identified—"fail[ed] to diligently perform their duties and fulfill their promises"—none of which are specified.  Marrero further alleges that unnamed officials of the State promised "the creditors of Public Investors, Inc." (again, none of whom are specified) that the state employees would "diligently perform their duties in a timely fashion".  Marrero alleges that the State, through the aforementioned "various officials, agents and employees", knew that Public Investors was insolvent in October 1989, but nevertheless approved or failed to prevent Public Investors from selling its subsidiaries and diverting the proceeds, or from engaging in the Parkway Plaza land deal.[21]

Marrero's counterclaim contains no allegations of conduct that is "not the kind of conduct that can be said to be grounded in the policy of the regulatory regime".[22]  On the contrary, the State argues persuasively that the Insurance Commissioner's decisions whether to approve financial transactions by insurance companies are imbued with economic policy concerns of the highest order.  Marrero cites no statutes imposing a mandatory duty on the Insurance Commissioner or other state official, and because the statutes involved appear to vest the Commissioner with some discretion, we

---

[19]*Id.* at 324-25, 111 S.Ct. at 1274-75 (footnote omitted).  Marrero correctly points out that the Louisiana Supreme Court did not rely on this quotation from *Gaubert* in its opinion in *Rick.* Given the general reliance by Louisiana courts on federal FTCA precedents in interpreting the scope of the state's "discretionary function" statute, however, we consider the quoted language from *Gaubert* fully applicable in this case.

[20]*See supra* note 1.

[21]In sum, Marrero charges that Public Investors's success in deceiving the state should redound to the benefit of Public Investors's creditors.  The analogy presents itself of a robber suing the arresting officer for failing to prevent the robbery.  While we do not impute Public Investors's shady motives to its bankruptcy trustee, who apparently was not involved with Public Investors before it filed for bankruptcy, we still note that the equities in this case are far from being tilted in Marrero's favor.

[22]*Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275.

presume that the Commissioner is exercising that discretion based on the same policy concerns that animate the statutes themselves.[23]  Accordingly, we conclude that Marrero has not overcome the "discretionary function" exemption of § 9:2798.1, and we uphold the district court's dismissal of his counterclaim.

## III.

Marrero next contends that the district court abused its discretion in denying him leave to amend his counterclaim.  It is not entirely accurate to say that the district court denied Marrero leave to amend, however.  What actually happened is that the district court considered Marrero's proffered amendment and rejected it on the merits, finding that it did not suffice to cure the defects in his counterclaim as originally pleaded.[24]  We find no error in the district court's action.  Marrero has not, even at this late date, alleged or presented a scintilla of evidence that any state official violated any mandatory duty or engaged in any of the types of conduct specified in La.Rev.Stat.Ann. § 9:2798.1(C).  Marrero offers us no reason to think that an amendment at this point would alter the fate of his claim.  Accordingly, we uphold the district court's ruling on Marrero's attempted amendment and reject his request for leave to amend now.

## IV.

Finally, Marrero requests that in the event we hold that the Eleventh Amendment bars his counterclaim against the State, we order this case remanded to state court.  We resolve this case solely on the grounds of the state discretionary function statute and do not reach the Eleventh Amendment question.  Accordingly, we need not address Marrero's request for a remand.

---

[23]*See Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274.  Marrero relies on, inter alia, La.Rev.Stat.Ann. § 22:2, which merely provides that the State will regulate the business of insurance in the public interest.  We are unable to read this section as imposing any mandatory duty to take a certain action, or to refrain from taking a certain action, that was violated by the Insurance Commissioner in this case.

[24]In its ruling on Marrero's motion for reconsideration, the district court stated that:

> The Trustee's motion for reconsideration adds nothing that would remove its claim against the State from discretionary acts immunity.  Although the Trustee reasserts his earlier argument that certain state officials failed to perform their duties, he continues to be unable to point to a mandatory statute or regulation that was violated.  We are unmoved from our previous position.

We AFFIRM the district court's judgment.

. . . . .