# COURT OF APPEAL

# FIRST CIRCUIT

## 2019 CA 0452

## ROBIN DOMINIQUE AND ELDON DOMINIQUE, JR.

### VERSUS

ST. TAMMANY PARISH, ST. TAMMANY PARISH SHERIFF'S OFFICE,
ST. TAMMANY CORONER'S OFFICE, ST. TAMMANY PARISH OFFICE
OF RISK MANAGEMENT, THE ESTATE OF RODERICK RIST,
EMILY BUELL RIST, ABC INSURANCE COMPANY,
DEF INSURANCE COMPANY, AND XYZ INSURANCE COMPANY

Judgment Rendered:    **SEP 1 6 2020**

\* \* \* \* \* \*

On Appeal from the
Twenty-Second Judicial District Court,
In and for the Parish of St. Tammany,
State of Louisiana
Docket No. 2014-13260, Div. I

Honorable Reginald T. Badeaux, III, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Jonathan E. Mitchell<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellants,<br>Robin Dominique and Eldon Dominique,<br>Jr. |
| Chadwick W. Collings<br>Mandeville, Louisiana | Counsel for Defendant/Appellee,<br>Rodney J. "Jack" Strain, in his official<br>capacity as former St. Tammany Parish<br>Sheriff |

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY, McDONALD, CHUTZ, AND
BURRIS,[1] JJ.

---

[1]Judge William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**WHIPPLE, C.J.,**

This matter is before us on appeal by plaintiffs, Robin Dominique and Eldon Dominique, Jr., from a judgment of the trial court granting a motion for summary judgment in favor of the defendant, Rodney J. "Jack" Strain, in his official capacity as former St. Tammany Parish Sheriff, and dismissing plaintiffs' claims against him with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 30, 2013, Roderick Rist, now deceased, entered the law office of Tim Upton in St. Tammany Parish and began indiscriminately shooting rounds of gunfire in the office before turning the gun on himself. Robin Dominique, who was employed by Mr. Upton, was in the office at the time of the shooting but was not physically struck by Rist's gunfire.

Ms. Dominique and her husband, Eldon Dominique, Jr., filed a petition for damages in July 2014, alleging that Ms. Dominique sustained "severe and permanent injury" as a result of the events that transpired on July 30, 2013, and her husband sustained a loss of consortium. Rodney J. "Jack" Strain, in his capacity as St. Tammany Parish Sheriff at the time of the shooting, was among those named as defendants.[2] In their petition, plaintiffs allege that St. Tammany Parish Sheriff's deputies acted negligently when they confronted Rist at his home on the night before the shooting, which they maintain was a substantial factor in bringing about the harm they suffered.

Prior to the July 30th incident herein, on May 14, 2013, Rist's sister, Deneen Rist, obtained an order of protective custody ("OPC") from the St. Tammany Parish Coroner after reporting that Rist threatened to "kill everyone" and himself. Acting on the authority of the OPC, St. Tammany Parish Sheriff's Deputy Chad

---

[2]Randy Smith currently serves as the St. Tammany Parish Sheriff.

2

Keating transported Rist from his home to Oschner Northshore, without incident, for evaluation/treatment. It is unclear when Rist was released from this facility.

On July 16, 2013, St. Tammany Parish Sheriff's Deputy Richard Edwards was dispatched to a residence in Slidell, Louisiana, in reference to a complaint of criminal damage to property. Upon arriving at the residence, Emily Rist, Rist's mother, advised Deputy Edwards that Rist allegedly drove his truck into her car, causing it to roll into the porch of her home. Following this incident, Deneen Rist obtained a second OPC on July 16, 2013, upon reporting to the St. Tammany Parish Coroner that Rist may be a danger to himself and others. Again acting on the authority of the OPC, Deputy Edwards made contact with Rist at his residence and transported him to Slidell Memorial Hospital, without incident. However, in the course of taking Rist into custody, Deputy Edwards observed that Rist was in possession of three firearms, which Deputy Edwards removed from the residence "as a safety precaution."[3] The next day, the guns were released to Emily Rist "for safekeeping."

Rist was subsequently transferred from Slidell Memorial to Community Care Hospital, where he remained until being discharged on July 23, 2013. According to his mother, Rist was "doing fine" when he was discharged. Thus, on July 25, 2013, Ms. Rist ultimately returned the guns she had retrieved from the St. Tammany Parish Sheriff's Office to Rist.

Following his release from Community Care, but before the July 30th incident, Rist told his neighbor, Harold Innerarity, that he intended to "take out"

---

[3]Louisiana Revised Statute 28:53.2 pertinently provides that when executing an OPC:

C. The order for custody shall be in writing, in the name of the state of Louisiana, signed by the district judge or parish coroner, and shall state the following:

\*\*\*

(5) That law enforcement officers are to use reasonable and necessary precautions when appropriate, in the execution of an order for custody [...]to avoid a violent encounter with the person being taken into custody. For the purposes of this Paragraph, "reasonable and necessary precautions" include crisis management strategies.

his divorce lawyer and a judge, that he was "preparing himself for a showdown," wanted to "make a statement," and wanted to "go out in a blaze of glory." Rist did not identify the lawyer or judge by name.

On July 28, 2013, Mr. Innerarity, still disturbed by Rist's comments, approached an unidentified St. Tammany Parish Sheriff's deputy he saw sitting in a patrol unit in an IHop restaurant parking lot. Shortly after Mr. Innerarity approached the deputy, a second, unidentified deputy arrived on the scene. Mr. Innerarity told the deputies that Rist was "planning on possible suicide or homicide, that he has made threatening gestures toward his lawyer and his judge, that he has multiple firearms with intent to use" and "thousands of rounds of ammunition."[4] One of the deputies acknowledged they had previously "had issues" with Rist. Mr. Innerarity spoke to the deputies for approximately ten to fifteen minutes, but no incident report was prepared.

Because Mr. Innerarity felt that the deputies "weren't taking it serious," he went to the St. Tammany Parish Sheriff's Office complex in Slidell later that day. Lt. Jeffrey Brady assured Mr. Innerarity that the deputies he spoke to in the restaurant parking lot had made him aware of "what's going on." During his deposition, Lt. Brady recalled that Mr. Innerarity was "concerned about [Rist's] mental status because he was making some disparaging remarks." Lt. Brady was familiar with Rist, having dealt with him regarding the July 16th OPC.

Because deputies could not act on third-party information, Lt. Brady advised Mr. Innerarity to go to the coroner's office to obtain an OPC for Rist. Lt. Brady contacted the coroner's office to give them "a heads-up" that Mr. Innerarity was on his way. Lt. Brady also provided the coroner's office with his contact information

---

[4]Mr. Innerarity testified that when he spoke to Rist, Rist demonstrated "how fast he could draw the firearm, expel the magazine, and throw another magazine in." However, contrary to plaintiffs' argument, the testimony provided in the record does not reflect that Mr. Innerarity advised deputies of Rist's proficiency in handling firearms.

so that he could be notified when the OPC was issued, authorizing him to take Rist into custody.

As advised, Mr. Innerarity went to the coroner's office. He did not recall precisely what he said concerning Rist's threats, but he advised an employee of the coroner's office that Rist was a "dangerous man." Ultimately, an OPC was not issued, because Mr. Innerarity declined to sign the required affidavit out of fear that Rist would retaliate against him. A coroner investigator advised Lt. Brady that although there were sufficient grounds to issue an OPC, because Mr. Innerarity refused to sign the affidavit, the coroner's office could not provide further assistance.

Upon learning this, Lt. Brady went to Rist's home the next day, July 29, 2013, to conduct a welfare check. During their interaction, Lt. Brady observed Rist to be "receptive and polite and courteous." Rist assured Lt. Brady that he was "fine and in good health" and "would never do anything to harm anyone." After speaking to Rist, Lt. Brady believed he was "in a good state of mind" and "there was nothing to indicate that he was a danger to himself or others." As a result, Lt. Brady concluded he had no cause to take Rist into custody absent an order from the coroner.

Following the welfare check, Rist visited Mr. Innerarity at his home, boasting that he successfully misled the deputies and "calmed them down with [his] demeanor." Rist reported that he assured the deputies that he was not mad at anyone. According to Mr. Innerarity, Rist was confident that he did not show fear or anger during his discussion with deputies; rather, Rist claimed that he was "on drugs" and was "laid back" and talked to the deputies "real nice." Rist also told Mr. Innerarity that he was unhappy because he knew Mr. Innerarity reported him to police.

After Rist left, Mr. Innerarity contacted the St. Tammany Parish Sheriff's Office to report that he was upset that the deputies disclosed enough information to allow Rist to conclude that Mr. Innerarity contacted them. Mr. Innerarity wanted the Sheriff's Office to know that "something could go down," but he did not request that deputies be dispatched to his home nor is there an indication that he advised the dispatcher of Rist's ruse during the welfare check.

Rist knocked on Mr. Innerarity's door the following morning, July 30th. However, Mr. Innerarity could see that Rist was acting "very strange" – "[h]e had a stance about him that he never had before." Unsure of Rist's intentions, Mr. Innerarity did not open the door, and he had no further contact with Rist. The shooting at Mr. Upton's law office occurred later that day.

The Sheriff filed a motion for summary judgment in May 2018, seeking dismissal of plaintiffs' claims, contending plaintiffs could not meet the *prima facie* requirements for a cause of action in negligence, and thus could not meet their burden of proof at trial. According to the Sheriff, his deputies' actions and inactions are shielded from liability by LSA-R.S. 9:2798.1, Louisiana's discretionary immunity statute. The Sheriff further contended that he was entitled to summary judgment in his favor as a matter of law, as plaintiffs could not succeed on any of the seven theories of negligence asserted against him in their original and amended petitions for damages, specifically: (1) failure to properly investigate threats of violence by an individual known to be dangerous and mentally unstable; (2) failure to properly and thoroughly confiscate firearms from the home of a mentally unstable individual; (3) failure to place confiscated firearms in an appropriately secure location; (4) failure to delegate responsibility for the handling of such investigations to adequately trained and qualified personnel; (5) failure to perform an appropriate background check on an individual previously placed under a protective order who made threats of violence; (6)

6

failure to properly coordinate efforts with other offices and/or divisions of the St. Tammany Parish government; and (7) vicarious liability. In support, the Sheriff offered the May 2013 OPC and affidavit of Deputy Keating; the July 2013 OPC, affidavit of Deputy Edwards, and Release of Property Form; deposition excerpts of Emily Rist, Deneen Rist, and Mr. Innerarity; and the affidavits of Lt. Brady and Major Wharton Muller of the St. Tammany Parish Sheriff's Office.

Plaintiffs opposed the motion, primarily disputing the application of LSA-R.S. 9:2798.1 and further asserting that genuine issues of material fact existed, which precluded dismissal of their negligence causes of action. In support of their opposition, plaintiffs relied on deposition excerpts of Mr. Innerarity, Lt. Brady, Deputy Edwards, and Emily Rist, and the affidavit of plaintiffs' expert in police procedures and policies, Andrew J. Scott, III.

At the conclusion of a contradictory hearing on August 14, 2018, the trial court granted the Sheriff's motion. The trial court held that the immunity provided in LSA-R.S. 9:2798.1 applied to the deputies' actions taken in the "course of their lawful powers and duties," and, further, that plaintiffs could not establish a *prima facie* case against the defendant under a duty/risk analysis. A final judgment was signed the same day, dismissing all claims asserted by plaintiffs against the Sheriff, with prejudice.

Plaintiffs then filed the instant appeal.

## DISCUSSION

On appeal, plaintiffs essentially contend that: (1) immunity pursuant to LSA-R.S. 9:2798.1 does not apply; (2) the deputies allegedly breached a duty to identify and warn Rist's intended victims; and (3) the deputies allegedly breached a duty to follow the "Statutory Mandate Regarding Confiscation of Firearms." Plaintiffs also argue that the deputies had a duty to take Rist into custody and/or take other preventive measures after being informed by the coroner that an OPC

would have been issued but for Mr. Innerarity's refusal to sign the required affidavit.[5]

In their brief to this Court, plaintiffs frame the issue to be resolved on appeal as whether the statutory law, jurisprudence, and an affidavit by plaintiffs' law enforcement expert setting forth a purportedly non-discretionary duty on the part of the defendant's deputies are sufficient to defeat summary judgment on the issue of qualified immunity. As plaintiffs note, the facts leading up to the shooting incident are well-documented. Thus, the question before the lower court and this Court, in reviewing the summary judgment, is whether the defendants established that the immunity defense applied herein in favor of the Sheriff and whether plaintiffs made a sufficient showing to rebut its application under the facts presented herein.

Appellate courts review summary judgments *de novo*, using the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Moreno v. Entergy Corporation, 2012-0097 (La. 12/4/12), 105 So. 3d 40, 47. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the mover. LSA-C.C.P. art. 966(D)(1). When the moving party will bear the burden of proof at trial, he must support his motion for summary judgment with credible evidence that would entitle him to a directed verdict if not controverted at trial. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So. 2d 764, 766 (*per curiam*). Such an affirmative showing will then shift the burden of production to the party

---

[5]Plaintiffs do not challenge the August 14, 2018 judgment insofar as it dismissed their negligence claims concerning the deputies' alleged failure to delegate responsibility for the handling of the investigation to adequately trained and qualified personnel, failure to perform a background check, and failure to coordinate efforts with other offices and/or divisions of the St. Tammany Parish government. Therefore, we consider these theories abandoned on appeal. See Uniform Rules - Louisiana Courts of Appeal, Rule 2-12.4(B)(4).

opposing the motion, requiring the opposing party to produce evidence to demonstrate the existence of a genuine issue for trial. Hines, 876 So. 2d at 766-767.

On appeal, plaintiffs contend that the trial court erred in granting summary judgment and in finding that discretionary immunity applied where their negligence claims are based on individual decisions made by the deputies (Lt. Brady) when confronting Rist at his house on the night before the shooting and the Sheriff failed to establish the policies applicable to the deputies' conduct. Plaintiffs further contend that Major Martin Muller's affidavit concerning adherence by the deputies to applicable policies should have been excluded as merely conclusory and outside his knowledge.

Because Sheriff Strain raised discretionary immunity in his motion for summary judgment, he bore the burden of proving the affirmative defense. Mercadel v. State Through Department of Public Safety & Corrections, 2018-0415 (La. App. 1st Cir. 5/15/19), 2019 WL 2234404, *5 (unpublished); Hanks v. Entergy Corporation, 2006-477 (La. 12/18/06), 944 So. 2d 564, 583, n. 1 (Weimer, J., concurring, "Our jurisprudence has consistently held that a person pleading an affirmative defense bears the burden of proving such a defense, and of course it must be established by a preponderance of the evidence.").[6] Immunity statutes are

---

[6]The Sheriff cites Marshall v. Sandifer, 2017-1246 (La. App. 1st Cir. 9/21/18) 2018 WL 4520245, *5 (unpublished), writs denied, 2018-1907, 263 So. 3d 1152 & 2018-1991, 263 So. 3d 896 (La. 2/11/19), wherein this court stated, "Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it." However, we find Marshall distinguishable. There, the plaintiff alleged in his petition that the officer's conduct amounted to "gross and flagrant recklessness, carelessness...," and the issue raised in the subject motion for summary judgment was whether the officer's conduct was, in fact, reckless or flagrant such that the *exception* to immunity applied. See Marshall, 2018 WL 4520245 at *1; LSA-R.S. 9:2798.1(C). It appears the threshold issue of whether the defendant's conduct was grounded in social, economic, or political concerns was not in dispute in Marshall. If the defendant establishes entitlement to immunity, the burden shifts to the plaintiffs to show there is conduct that would except the defendants from immunity. See Doyle v. Lonesome Development, Limited Liability Co., 2017-0787 (La. App. 1st Cir. 7/18/18), 254 So. 3d 714, 725, writ denied, 2018-1369 (La. 11/14/18), 256 So. 3d 291. Conversely, in Mercadel, 2019 WL 2234404, *5, like the instant case, the issue was whether the defendant satisfied its initial burden of proving entitlement to immunity, not whether the plaintiff satisfied his burden of showing that an exception to immunity applied.

strictly construed against the party claiming immunity. <u>Banks v. Parish of Jefferson</u>, 2008-27 (La. App. 5th Cir. 6/19/08), 990 So. 2d 26, 30, <u>writ denied</u>, 2008-1625 (La. 10/24/08), 992 So. 2d 1043.

Louisiana Revised Statute 9:2798.1 exempts public entities from liability for their employees' discretionary or policy-making acts. <u>Hardy v. Bowie</u>, 98-2821 (La. 9/8/99), 744 So.2d 606, 613. Specifically, under LSA-R.S. 9:2798.1, public entities, including sheriffs and sheriff's deputies, are immune from tort claims based on their policy-making decisions or discretionary acts carried out within the course and scope of their employment. <u>Mercadel</u>, 2019 WL 2234404 at *5. As set forth in LSA-R.S. 9:2798.1:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
>
> C. The provisions of Subsection B of this Section are not applicable:
>
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
>
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

Our Supreme Court has held that LSA-R.S. 9:2798.1 is "clear and unambiguous" and applies to "policymaking or discretionary acts when such acts are within the course and scope of ... lawful powers and duties." <u>Gregor v. Argenot Great Central Insurance Co.</u>, 2002-1138 (La. 5/20/03), 851 So. 2d 959, 967;[7] <u>Herrera v. First National Insurance Company of America</u>, 2015-1097 (La.

---

[7] As this court noted in <u>Sauceberry v. Webre</u>, 2016-0719 (La. App. 1st Cir. 5/5/17), 2017 WL 1788096, *4 (unpublished), n. 1, <u>writ denied</u>, 2017-1524 (La. 11/17/17), 229 So. 3d 931, the plurality opinion in <u>Gregor</u>, 851 So. 2d at 967 appears to be internally inconsistent in its treatment of <u>Fowler v. Roberts</u>, 556 So. 2d 1 (La. 1989) (on rehearing). In <u>Gregor</u>, the plurality opinion described the statutory interpretation analysis in <u>Fowler</u> as "flawed" in that the immunity statute does not contain the language "grounded in social, economic or political policy," nor does it distinguish between operational acts and ministerial policymaking acts. The <u>Gregor</u> court then

10

App. 1st Cir. 6/3/16), 194 So. 3d 807, 814, writ denied, 2016-1278 (La. 10/28/16), 208 So. 3d 885.

The Louisiana Supreme Court has established a two-part test for courts to follow when determining whether immunity under LSA-R.S. 9:2798.1 applies. See Fowler v. Roberts, 556 So. 2d 1, 15 (La. 1989) (on rehearing). A court must first determine whether a statute, regulation, or policy requires the government employee to follow a particular course of action. Fowler, 556 So. 2d at 15. If there is such a requirement, then there is no choice or discretion involved, and the immunity does not apply. Fowler, 556 So. 2d at 15. However, in those instances where the exercise of discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is, one grounded in social, economic, or political policy. Fowler, 556 So. 2d at 15. The immunity statute does not protect operational governmental decisions, but only confers immunity for discretionary decisions based on social, economic, or political concerns. See Chaney v. National R.R. Passenger Corporation, 583 So. 2d 926, 929 (La. App. 1st Cir. 1991). In other words, when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures. Sauceberry v. Webre, 2016-0719 (La. App. 1st Cir. 5/5/17), 2017 WL 1788096, *4 (unpublished), writ denied, 2017-1524 (La. 11/17/17), 229 So. 3d 931.

### Immunity for Failure to Exercise Protective Custody

The Sheriff contends that the statutory immunity applies, as here, where the actions taken by his deputies were discretionary, and does not hinge upon the characterization of the act as "operational" or not, pursuant to LSA-R.S. 28:53(L)(1), which provides in part:

---

denied immunity, finding the decision was not grounded in policy, but was operational negligence, citing Archon v. Union Pacific Railroad, 94-2728 (La. 6/30/95), 657 So. 2d 987, 996, a progeny of Fowler. For reasons explained in Sauceberry, we do not interpret Gregor as overruling the analysis contained in Fowler or its progeny.

A peace officer [...] **may** take a person into protective custody and transport him to a treatment facility for a medical evaluation **when, as a result of his personal observation, the peace officer [...] has reasonable grounds to believe the person is a proper subject for involuntary admission to a treatment facility because the person is acting in a manner dangerous to himself or dangerous to others,** is gravely disabled, and is in need of immediate hospitalization to protect such a person or others from physical harm.

(Emphasis added.)

There is a presumption that when government employees exercise discretion given to them by a statute or regulation, they are doing so based on the same policy concerns that animate the controlling statute or regulation itself. State of Louisiana v. Public Investors, Inc., 35 F. 3d 216, 221 (5th Cir. 1994). The Sheriff argues that where the welfare check and related decision not to take Rist into protective custody by Lt. Brady were made pursuant to a discretionary statute, the policy considerations underlying the statute were imputed to Lt. Brady's actions in determining whether he had cause to take Rist into protective custody, such that statutory immunity applied to his acts. On review, we agree.

Pursuant to LSA-R.S. 28:53, the deputies were vested with the discretion, grounded in social, economic, or political policy, to determine whether to take Rist into protective care, and the deputies undisputedly were acting in the course and scope of their lawful powers and duties when they conducted the welfare check and found no basis to do so, such that the discretionary immunity set forth in LSA-R.S. 9:2798.1 applies.

To the extent that plaintiffs argue the deputies were negligent in failing to take Rist into custody and violated a duty owed to plaintiffs, we find no merit. As the record demonstrates, the deputies lacked any legal authority to confine Rist. As noted above, LSA-R.S. 28:53(L)(1) provides that a peace officer "may" take a person into protective custody when, "as a result of his personal observation," he believes the person should be admitted because the person "is acting in a manner

12

dangerous to himself or dangerous to others, is gravely disabled, and is in need of immediate hospitalization" to protect himself or others from immediate physical harm.

The evidence presented herein shows that on the welfare check the day before the shooting, Lt. Brady observed Rist to be "receptive and polite and courteous," Rist assured Lt. Brady that he was "fine and in good health," and Rist represented that he "would never do anything to harm anyone." After observing and interacting with Rist, Lt. Brady thereafter concluded that Rist was "in a good state of mind," that "there was nothing to indicate that he was a danger to himself or others," and that he had no cause to take Rist into custody absent an order from the coroner.

There is no evidence in the record to dispute Lt. Brady's testimony concerning these events and what he observed during his interaction with Rist on July 29, 2013. Lt. Brady understood that while Rist's prior history was relevant, it could not affect his determination of whether to take Rist into protective custody on that date. Instead, as Lt. Brady explained, the decision as to whether the circumstances called for the exercise of protective custody must be based on "the here and now and what that person is saying or acting like" or "what condition they're in" that day, rather than the condition the person was in weeks, months, or years ago. Accordingly, we find no merit to this argument by plaintiffs.

### Liability for Failure to Investigate Threats
### And Warn Potential Victims

Plaintiffs further contend that the Sheriff is not entitled to statutory immunity for his purported failure to investigate, identify, and warn potential victims. However, this theory was discussed and rejected in Sarasino v. State Through Department of Public Safety and Corrections, 16-408 (La. App. 5th Cir.

13

3/15/17), 215 So. 3d 923, 929-930, which we find applicable and persuasive herein.

In Sarasino, plaintiffs asserted that the shooting that led to the death of their loved one would not have occurred if the sheriff had placed a guard in front of the victim's home 24 hours a day, seven days a week or if the sheriff had timely arrested the shooter after a warrant was issued for his arrest. The court concluded that both of these claims involved the permissible exercise of policy decisions concerning the allocation of personnel and investigative resources to which statutory immunity applied, and that the sheriff acted within his discretion in deciding whether to assign a deputy to guard the victim's home, rather than the home of any other victim, as well as how, when, and how often to search for someone who had threatened others. Sarsino, 215 So. 3d at 930.

Similarly, the claims by plaintiffs herein essentially challenge a policy decision not to deploy further investigative resources following the wellness visit, where Rist appeared to be in a good state of mind and deceived deputies into believing he was not a risk to others and would never harm anyone. The decision not to dispatch deputies and resources to further investigate the identity of Rist's lawyer and any judge that may have acted on his case clearly involves the permissible exercise of policy decisions such as how to allocate and employ resources and manpower, such that the statutory immunity applies to defeat plaintiffs' claims based on the alleged failure to act. See Sarasino, 215 So. 3d at 929-930.

As to plaintiffs' contention that Lt. Brady breached a duty owed to these plaintiffs to attempt to identify Rist's potential victims and to warn them, particularly Mr. Upton, of the threats of violence made against them, we likewise find no merit. A police officer has a duty to exercise his authority with respect and concern for the well-being of those he is employed to protect and serve, including

the duty to prevent and detect crime. See LSA-R.S. 40:2402(3)(A); Lavine v. Jackson, 97-2804 (La. App. 1st Cir. 12/28/98), 730 So. 2d 958, 961-962; and Toomer v. Mizell, 2016-0333 (La. App. 1st Cir. 2/21/17), 2017 WL 679203, *4 (unpublished).

Plaintiffs argue that liability should be imposed and that summary judgment was improper where the Sheriff failed to establish the policy applicable to the deputies' conduct. Plaintiffs argue that the Sheriff failed to do so and that any representations by Major Muller in his affidavit were merely conclusory and of no moment in determining whether there was a breach of the standard of care governing the deputies' actions.

The issue to be decided when determining whether an officer breached his duty to a particular plaintiff is not whether the officer failed to comply with department policy. Instead, the issue is whether the course of action is considered reasonable in the context of the duty owed under the totality of the circumstances. Brooks v. City of Jennings, 2006-680 (La. App. 3rd Cir. 11/22/06), 944 So. 2d 768, 773. See also Jones v. Congemi, 2001-1345 (La. App. 5th Cir. 5/13/03), 848 So. 2d 41, 47, writ denied, 2003-1647 (La. 10/10/03), 855 So. 2d 354. Although law enforcement officers should indeed comply with their department's internal policies and regulations in the discharge of their duties, when determining the scope of duty owed by a law enforcement officer and whether the duty was breached, the legal question is whether the officer's actions were warranted, not solely whether he complied with departmental policies. Therefore, the issue of Lt. Brady's compliance (or lack thereof) with the applicable policies and procedures of the St. Tammany Parish Sheriff's Office, whatever those may be, is not dispositive of the legal issue before the court of whether his acts were subject to statutory immunity. Moreover, to the extent that plaintiffs rely on the affidavit of Andrew J. Scott, III, a purported law enforcement expert, to establish the duty owed, we note

that duty is a question of law. Thus, the testimony of an expert is not proper on the theory that the court itself has the expertise to discern the law. See Bowman v. City of Baton Rouge/Parish of East Baton Rouge, 2002-1376 (La. App. 1st Cir. 5/9/03), 849 So. 2d 622, 627, writ denied, 2003-1579 (La. 10/3/03), 855 So. 2d 315; Wilson v. Wilson, 542 So. 2d 568, 573 (La. App. 1st Cir. 1989).

The Sheriff points out that no duty to warn was owed as the deputies never became aware that Rist harbored homicidal ideations against Mr. Upton, plaintiff's employer. Instead, the Sheriff argues in this case, there was simply no way for the Sheriff's Office to have known that Rist would go out and make an attack on this particular law office or this particular plaintiff. We agree.

As to plaintiffs' claim that Lt. Brady breached a duty to attempt to identify Rist's potential victims and to warn them of the threats of violence made against them, we again note that this theory was specifically discussed and rejected in Sarasino. To impose the duty alleged by plaintiffs would have involved the allocation of additional resources to investigate the public records to determine which attorney had represented Rist, the identity of the judge or judges he had appeared before, and who was assigned to his divorce case. As such, these decisions concern the allocation of time and resources, matters that are within the discretion of the Sheriff and his policy decisions, for which he is statutorily immune. Moreover, as set forth above, when the deputies went to see Rist, he appeared rational, in touch with reality, and harmless. For these reasons, the wellness visit failed to create any additional duties and there was no reason to investigate further. See Sarasino, 215 So. 3d at 930 (This decision "clearly invokes the permissible exercise of policy decisions such as how to allocate and employ resources and manpower, and thus statutory immunity clearly applies to defeat plaintiffs' claim in this regard.").

16

Even if we were to find that a distinct "duty to warn or protect" the unidentified lawyer and judge exists, we have found no authority to support the extension of such a duty to an unidentified potential bystander, such as Ms. Dominique herein. While the circumstances of this case are tragic, and obviously were traumatic for Ms. Dominique, even if the deputies had investigated further and been able to successfully identify and inform Rist's lawyer, there is no way of knowing what the lawyer would have done with that information. In any event, we are constrained to conclude that the deputies did not have a duty to inform plaintiffs or others who worked for the lawyer regarding a purported potential threat.

Thus, we find no error in the trial court's dismissal of plaintiffs' negligence cause of action based on the theory that the Sheriff's deputies breached the standard of care by failing to properly investigate the threats made by Rist or to warn his potential victims.

### Duty to Confiscate Firearms

Finally, plaintiffs contend that the statutory immunity must fail where the deputies were negligent in failing to maintain custody of the firearms removed from Rist's home while executing the OPC on July 16, 2013. Plaintiffs allege that LSA-R.S. 40:1798(D) required that the deputies return the guns to the owner, i.e., Rist, and that the guns should not have been returned to Rist's mother. Plaintiffs further maintain that it was unreasonable to return the guns to anyone, since the deputies had removed the weapons from Rist's home when he was "unstable" and after he allegedly hit his mother's house with his car. They assert that the only reasonable thing to do was for the deputies to have Rist report to the station in order to determine, based on the available information, whether it was safe to return the guns to Rist. Without citing legal authority, the plaintiffs assert that

17

because Rist was taken into custody pursuant to an OPC on July 16, 2013, he "could not possess the firearms" on July 30, 2013, the day of the shooting.

Louisiana Revised Statute 40:1798(D) relevantly states:

> If the seized or forfeited firearm is not contraband, and if the law enforcement agency knows the owner of the seized or forfeited firearm, and if the owner did not commit any violation of any federal or state law or local ordinance in which the seized or forfeited firearm was involved, and if the owner may lawfully possess the seized or forfeited firearm, the law enforcement agency shall return the seized or forfeited firearm to the owner.

For purposes of LSA-R.S. 40:1798, "seized" means "lawfully taken and held by a law enforcement agency in connection with an investigation or prosecution of criminal activity." See LSA-R.S. 40:1798(B)(5). It is undisputed that the guns at issue were not "seized" and that Rist was not under any order or judgment that prohibited him from lawfully possessing firearms. Considering this and the undisputed fact that the weapons were not contraband, evidence of a crime, or used in the commission of a crime, the Sheriff correctly argues that deputies had an affirmative duty under the law to return Rist's property. Article I §4(C) of the Louisiana Constitution, "Right to Property," mandates that personal effects, other than contraband, shall never be taken. See also LSA-R.S. 40:1798(D).

Furthermore, even if a technical violation of this provision occurred in that the deputies returned the guns to someone other than the owner, we agree with the Sheriff that plaintiffs failed to show that Rist used any of these weapons during his assault on Mr. Upton's law office. Conversely, the evidence establishes that Rist was in possession of several guns, any one of which may have been used in his attack. Mr. Innerarity testified that after deputies removed guns from Rist's home, Rist advised him that he had a "butt load of guns" and that the deputies "did not get them all." According to Mr. Innerarity, "[Rist] had the back bedroom loaded down with firearms and ammunition ready for war." Similarly, Emily Rist testified that after Rist was released from custody on the July 16th OPC, he went to her home

and "was in possession of another gun that he had just bought." At that point, Ms. Rist returned the guns to Rist, seeing no point in keeping them "if he's already got another one." Thus, on the record before us, under the undisputed facts, the trial court correctly found that the Sheriff was statutorily immune as there was no actionable negligence related to any duty arising from the confiscation (and return) of Rist's weapons. We also find no merit to this argument.

## CONCLUSION

For the foregoing reasons, the August 14, 2018 judgment of the trial court granting the Sheriff's motion for summary judgment and dismissing plaintiffs' claims against him with prejudice, is hereby affirmed. Costs of this appeal are assessed to plaintiffs/appellants, Robin Dominique and Eldon Dominique, Jr.

**AFFIRMED.**

# COURT OF APPEAL

# FIRST CIRCUIT

## 2019 CA 0452

ROBIN DOMINIQUE AND ELDON DOMINIQUE, JR.

VERSUS

ST. TAMMANY PARISH, ST. TAMMANY PARISH SHERIFF'S OFFICE,
ST. TAMMANY CORONER'S OFFICE, ST. TAMMANY PARISH OFFICE
OF RISK MANAGEMENT, THE ESTATE OF RODERICK RIST,
EMILY BUELL RIST, ABC INSURANCE COMPANY,
DEF INSURANCE COMPANY, AND XYZ INSURANCE COMPANY

* * * * * *

BURRIS, J., concurring in part and dissenting in part:

I concur with the result reached by the majority to affirm the dismissal of the plaintiffs' negligence cause of action against the Sheriff based on the deputies' alleged failure to take Rist into custody and alleged failure to confiscate Rist's firearms. However, I disagree with the majority's conclusion that La. R.S. 9:2798.1 applies in this matter and further find that genuine issues of material fact remain concerning whether Lt. Brady breached his duty to act reasonably under the circumstances by failing to attempt to identify Rist's potential victims and to warn them, particularly Mr. Upton, of the threats of violence made against them. Therefore, I would reverse the trial court's judgment to the extent that it dismissed the plaintiffs' negligence cause of action based on this theory of recovery and would also reverse the judgment insofar as it dismissed the plaintiffs' vicarious liability cause of action against the Sheriff.